**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

**UNITED STATES OF AMERICA,**

        **Plaintiff,**

**vs.**                                  **Case No. 8:05-CV-1082-T-27MAP**

**JAMES E. WILSON,**

        **Defendant.**
_____/

## ORDER

    **BEFORE THE COURT** is the United States' Motion for Summary Judgment (Dkt. 28), to which Defendant has responded in opposition (Dkt. 31). Upon consideration, the United States' motion is GRANTED.

### *Background*

    In this action, the United States seeks to recover statutory damages from the Defendant, who it alleges to have defaulted under a federal scholarship program. On September 23, 1998, Defendant was awarded a National Health Service Corps (NHSC) Scholarship Program Contract for the 1998-1999 and 1999-2000 school years ("the Contract"). (Dkt. 28-3). In return for the scholarship assistance, Defendant became obligated to provide primary health services in a federally-designated "health professional shortage area." (*Id*. at B.5.) The Contract required Defendant to serve for one year for each school year the scholarship award was provided, for a minimum of two years. (*Id*. at B.6.) The Contract further provided that:

> If the applicant, fails to begin or complete the period of obligated service incurred under this contract for any reason other than those in paragraph 1 of this section, the

1

United States shall be entitled to receive an amount equal to three times the scholarship funds awarded, plus interest.  (*Id.* at C.2.)

Defendant began his two years of service on August 1, 2000 as a physician assistant at the Pine Health Services' St. John Valley Health Center in Van Buren, Maine.  (Dkt. 28-4).  At some point, Defendant developed a substance abuse problem and began writing himself prescriptions for narcotics such as Valium, Ativan, and Xanax.  (Dkt. 28-10, Def. Dep. at 33).  On June 15, 2001, Michael Fogarty, the CEO of Pines Health Services, confronted him about his narcotics use and Defendant was placed on suspension.  (Def. Dep. at 34, 37).  Defendant returned to duty in December 2001.  (Def. Dep. at 43).  He began abusing narcotics medication again and failed urinalysis tests on December 4, 2001, December 12, 2001, December 17, 2001 and December 26, 2001.  (Def. Dep. at 44; Dkt. 28-11 at 1).

As a result, Defendant's physician assistant license was suspended by Maine's Board of Licensure in Medicine effective January 7, 2002.  (Dkt. 28-11 at 1).  On February 12, 2002, after a hearing, the Board continued the suspension of Defendant's license for six months.  (Dkt. 28-11 at 6).  Defendant's NHSC Private Practice Assignment Agreement provided that Defendant agreed to "be licensed to practice his/her profession in the State of which assigned."  (Dkt. 28-4 at 2).  Defendant's employment agreement with Pines Health Services also required him to at all times "possess a valid and unlimited license to practice as a physician assistant in the State of Maine."  (Dkt. 28-5 at 1).  On February 22, 2002, Defendant voluntarily resigned his position with St. John Valley Health Center.  (Dkt. 28-7).  Mr. Fogarty states that had Defendant not resigned, he would have been terminated for failure to possess a valid license to practice as a physician assistant in Maine.  (Dkt. 28-12, Fogarty Dec., ¶ 3).

2

The United States maintains that as of February 12, 2002 Defendant was in default of his service obligation. On March 19, 2002, Defendant was verbally advised of his default status by Michael Milner, the NHSC program consultant for Defendant's region. (Dkt. 28-13, Milner Dec., ¶ 3).

On January 30, 2003, Defendant requested that he be allowed to serve in lieu of paying his monetary obligation. (Dkt. 28-8 at 21). On August 14, 2003, the Department of Health and Human Services (DHHS) denied his request, as follows:

> After reviewing your credentials, the NHSC has determined that you have been away from the clinical practice of medicine in a primary care setting as a physician assistant for more than 1 year. It is the NHSC's prerogative to allow defaulters to serve in lieu of monetary repayment of their debt, and the NHSC chooses to accept providers who have the most current primary care skills. You may reapply for a service opportunity when you can show evidence that you have 12 consecutive months of current employment in a primary care setting as a physician assistant. Once the 12 months are successfully completed, you may write to the Legal and Compliance Branch (LCB) at the address below to request a service opportunity. (Dkt. 28-9 at 1).

Defendant did not make any further request to serve.

On June 9, 2005, the United States filed the instant action to reduce Defendant's defaulted NHSC obligations to judgment. (Dkt. 1). Defendant does not dispute that monies are owed, but contends that the United States may not recover based on the contract defenses of mistake, unconscionability, impossibility, failure to mitigate damages, and inconsistency, and because the United States allegedly failed to accommodate Defendant's alleged drug addiction disability and failed to provide Defendant a service opportunity or waiver. (Dkt. 10, ¶¶ 4-17).

### *Standard*

Summary judgment is proper if following discovery, the pleadings, depositions, answers to interrogatories, affidavits and admissions on file show that there is no genuine issue as to any material

fact and that the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); Fed. R. Civ. P. 56. "An issue of fact is 'material' if, under the applicable substantive law, it might affect the outcome of the case." *Hickson Corp. v. N. Crossarm Co.*, 357 F.3d 1256, 1259-60 (11th Cir. 2004). "An issue of fact is 'genuine' if the record taken as a whole could lead a rational trier of fact to find for the nonmoving party." *Id.* at 1260. All the evidence and factual inferences reasonably drawn from the evidence must be viewed in the light most favorable to the nonmoving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970); *Jackson v. BellSouth Telecomms.*, 372 F.3d 1250, 1280 (11th Cir. 2004).

Once a party properly makes a summary judgment motion by demonstrating the absence of a genuine issue of material fact, whether or not accompanied by affidavits, the nonmoving party must go beyond the pleadings through the use of affidavits, depositions, answers to interrogatories and admissions on file, and designate specific facts showing that there is a genuine issue for trial. *Celotex*, 477 U.S. at 323-24. Plaintiff's evidence must be significantly probative to support the claims. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249 (1986).

The Court will not weigh the evidence or make findings of fact. *Anderson*, 477 U.S. at 249; *Morrison v. Amway Corp.*, 323 F.3d 920, 924 (11th Cir. 2003). Rather, the Court's role is limited to deciding whether there is sufficient evidence upon which a reasonable juror could find for the non-moving party. *Id.*

## *Discussion*

By federal statute, an NHSC scholar who defaults on a service commitment is liable for liquidated damages of three times the amount of the scholarship support received plus interest at the prevailing rate, proportionally reduced for any part of the service obligation performed. 42 U.S.C. § 254l(f)(3); 42 U.S.C. § 254o(b)(1)(A). "That Congress intended the obligation of an NHSC

4

participant be fulfilled except in extreme circumstances is indicated by the punitive nature of the liquidated damage provision set out in § 254o(b)." *See United States v. Melendez*, 944 F.2d 216, 219 (5th Cir. 1991).

Defendant does not dispute that he is in breach of the NHSC agreements, but has raised a number of affirmative defenses.

1.    *Contract defenses*

Defendant has raised several traditional contract defenses: failure to mitigate damages, contractual impossibility, unconscionability, mistake, and inconsistency.[1]   These defenses are inapplicable because "[t]he conditions imposed upon an NHSC scholarship recipient arise from statutory directives, not from a negotiated agreement between the parties." *Melendez*, 944 F.2d at 219; *see also United States v. Vanhorn,* 20 F.3d 104, 110 (4th Cir.1994); *United States v. Becker*, 995 F.2d 779, 783 (7th Cir. 1993*); United States v. Citrin,* 972 F.2d 1044, 1049 (9th Cir.1992).   By federal law, the United States is entitled to recover liquidated damages from a scholarship recipient who is in breach of an NHSC contract.  42 U.S.C. § 254o(b)(1)(A).  Moreover, the Contract states that Defendant agreed to "comply with the provisions of Title 42, Code of Federal Regulations, Part 62, Subpart A," which includes the liquidated damages provision.  (Dkt. 28-3 at B.8.).

Defendant's service obligation could only be excused through the statutory waiver process, which is discussed in the next section.

---

[1] Although not properly raised as an affirmative defense, Defendant now argues that the "Certificate of Understanding" that he signed on June 25, 1998 is inconsistent with the Contract.  The Certificate stated: "If I fail to begin my obligated service, I will owe damages equal to 3 times the amount of the scholarship, plus interest."  (Dkt. 31-4).  The Contract stated that liquidated damages were available if Defendant "fails to begin *or* fails to complete" service.  Although the Court finds that this argument is irrelevant, it is noted that the terms of the documents are not inconsistent.  The Certificate is silent as to the implications of failing to complete service.  Moreover, the Certificate is signed by Defendant only, does not purport to be a contract, and was signed prior to the execution of the Contract.

5

2.      *Failure to grant waiver*

Pursuant to statute, Defendant could apply to the Secretary of the Department of Health and Human Services for a partial or total waiver of any service obligation or payment on the grounds that compliance was impossible, involved extreme hardship, or would be unconscionable.  42 U.S.C. § 254o(d)(2).  The regulations provide that compliance will be considered impossible if:

> the Secretary determines, on the basis of information and documentation as may be required, that the participant suffers from a physical or mental disability resulting in the permanent inability of the participant to perform the service or other activities which would be necessary to comply with the obligation. 42 C.F.R. § 62.12(c).

In assessing whether there is undue hardship or whether enforcement would be against good conscience, the Secretary considers:

> (1) The participant's present financial resources and obligations;
> (2) The participant's estimated future financial resources and obligations; and
> (3) The extent to which the participant has problems of a personal nature, such as physical or mental disability, terminal illness in the immediate family which so intrude on the participant's present and future ability to perform as to raise a presumption that the individual will be unable to perform the obligation incurred. 42 C.F.R. § 62.12(c).

No evidence in the record suggests that Defendant applied for a waiver under any of these provisions.  Defendant stated in his deposition that he did not seek a waiver of his monetary obligation.  (Def. Dep. at 57).  Thus, the Court cannot review the United States' alleged failure to provide a waiver because Defendant has not exhausted his administrative remedies.  *United States v. Barry*, 904 F.2d 29, 31 (11th Cir. 1990).

3.      *Failure to grant service request*

Defendant did apply for an opportunity to provide a service in lieu of payment.  As set forth above, this request was denied because Defendant had not been in clinical practice as a physician

6

assistant for the year preceding this request.  In making this decision, DHHS stated that its goal was to have providers with the most current primary care skills.[2]

Pursuant to the Administrative Procedure Act, a final agency action may be overturned when that action is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law. 5 U.S.C. § 706(2)(A).  Assuming, without deciding, that the denial of Defendant's request was a final agency action, the Court finds that it was well within the United States' discretion to deny Defendant's application based on his lack of recent clinical experience.  *See United States v. Gary*, 963 F.2d 180, 185 (8th Cir. 1992) (holding that agency's decision on doctor's request to serve in lieu of payment was not a reviewable agency decision, and even if it were, once doctor defaulted, Secretary had no obligation to consider offer to serve);  *United States v. Maldonado*, 867 F. Supp. 1184, 1197 (S.D.N.Y. 1994).  Moreover, the United States invited Defendant to reapply once he gained the requisite clinical experience.  Because any review of the agency decision is committed to the Court and is based on the administrative record, no trial is necessary, despite Defendant's repeated assertions to the contrary.  *See e.g. Preserve Endangered Areas of Cobb's History, Inc. v. U.S. Army Corps of Eng'rs*, 87 F.3d 1242, 1246-47 (11th Cir. 1996).

4.       *Violation of the ADA and Rehabilitation Act*

Defendant also contends that the United States failed to reasonably accommodate him in violation of the Americans with Disabilities Act and Rehabilitation Act.  Failure to comply with the ADA or Rehabilitation Act is not an affirmative defense to the instant action.  However, even if the

---

[2] Defendant's contention that the Forbearance Agreement (Dkt. 28-8 at 21) was signed by the United States, and that it therefore forms an enforceable contract that the United States breached by denying his request, is incorrect. Nor was Defendant's request to perform service in lieu of payment a "transfer request" as Defendant maintains, given that Defendant was currently in default and was not in any service from which he could transfer.

Court considered this as a properly pleaded counterclaim, Defendant has failed to present a prima facie case.[3]

Although the ADA does not apply to the United States, *see* 42 U.S.C.A. § 12111(5)(B)(i), the Rehabilitation Act does provide:

> No otherwise qualified individual with a disability in the United States, as defined in section 705(20) of this title, shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance or under any program or activity conducted by any Executive agency or by the United States Postal Service.  29 U.S.C. § 794(a); *Mullins v. Crowell,* 228 F.3d 1305, 1313 (11th Cir.2000).

To establish a prima facie case of discrimination under the Rehabilitation Act, an individual must show that he: (1) has a disability; (2) is otherwise qualified for the position; and (3) was subjected to unlawful discrimination as the result of his disability. *Sutton v. Lader,* 185 F.3d 1203, 1207-08 (11th Cir.1999).  In order to be considered "qualified for the position," or an "otherwise qualified individual," an individual must possess "sufficient experience and skills, an adequate educational background, or the appropriate licenses for the job." *Reed v. Heil Co.*, 206 F.3d 1055, 1062 (11th Cir. 2000); *see also Se. Comm. Coll. v. Davis*, 442 U.S. 397, 406 (1979) ("An otherwise qualified person is one who is able to meet all of a program's requirements in spite of his handicap").

Defendant argues that the United States failed to accommodate his alleged drug addiction disability by denying his request to serve in lieu of paying his monetary obligation.  However, as set forth in the August 14, 2003 letter from DHHS, the agency denied Plaintiff's request because he did not possess the requisite clinical experience.  Defendant has not argued or produced evidence that the selection criterion employed by DHHS tends to screen out or adversely affect disabled

---

[3] Although the United States has briefed Defendant's Rehabilitation Act "defense" as a properly pleaded counterclaim, the United States has not addressed the applicable statute of limitations or administrative exhaustion requirements. *Cf.* 45 C.F.R. § 85.61.  Accordingly, these issues are not evaluated.

individuals, nor has Defendant explained how his disability prevents him from obtaining one year of clinical practice as a physician assistant. *Kocsis v. Multi-Care Mgm't, Inc.*, 97 F.3d 876, 883 (6th Cir. 1996) (plaintiff did not meet burden of showing she was qualified where she introduced no evidence showing that the written requirement for a "train the trainer" certificate was not a genuine prerequisite for the position).

5. *Denial of substantive and procedural due process*

Although not raised as an affirmative defense or properly pleaded counterclaim, Defendant now argues in response to the motion for summary judgment that the determination of his service request without a hearing violates procedural due process, and that "a per se exclusion of a disabled person from certain public benefits violates substantive due process." (Dkt. 31 at 14). The Court finds that this argument was not properly raised, and in any event, is without merit.

In contrast to public benefits cases and cases in which employment is secured by rule or practice, Defendant has failed to provide any authority for the proposition that he possessed a protected property or liberty interest once he was in default of his NHSC obligations. *United States v. Barry*, 719 F. Supp. 1047, 1049 (M.D.Ala. 1989); *Bd. of Regents of State Coll. v. Roth*, 408 U.S. 564, 578 (1972). Nor has Defendant shown that the denial of his service request impinged on a "reputational liberty interest," because he has not shown the falsity of the government's basis for its decision. *Doe v. Garrett*, 903 F.2d 1455, 1462-63 (11th Cir. 1990).

Substantive due process protects a limited number of fundamental rights from "certain government actions regardless of the fairness of the procedures used to implement them." *McKinney v. Pate*, 20 F.3d 1550, 1556 (11th Cir. 1994) (citations omitted). Defendant has failed to identify any recognized fundamental right of which he was deprived. *Cf. Silva v. Bieluch*, 351 F.3d 1045, 1047 (11th Cir. 2003) (holding that employment is not a fundamental right).

9

*Conclusion*

Based on the foregoing, the Court finds that summary judgment is due to be granted on Plaintiff's claim.  Defendant's affirmative defenses are without merit.  Accordingly, it is

**ORDERED AND ADJUDGED** that

1)      The United States' Motion for Summary Judgment (Dkts. 28) is **GRANTED**;

2)      The United States shall file a proposed judgment within ten (10) days of the issuance of this Order, which shall set forth in detail the proposed calculation of damages pursuant to the statutory formula, 42 U.S.C. § 254o.  The United States shall also provide an electronic version of the proposed judgment to the Court.  Defendant shall have ten (10) days from the date of filing of the proposed judgment to file with the Court any objection to the proposed calculation.

**DONE AND ORDERED** in chambers this 31st day of January, 2007.

/s/ James D. Whittemore
**JAMES D. WHITTEMORE**
**United States District Judge**

Copies to:
Counsel of Record

10